## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DIANNE C. PHILLIPS<br><br>*Plaintiff*,<br><br>v.<br><br>DELTA AIR LINES , *et al.*,<br><br>*Defendants.* | CASE NO. 3:20-cv-00057<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

Plaintiff Dianne C. Phillips has filed the present action against Defendants Delta Air Lines, Inc. ("Delta"), Endeavor Air, Inc. ("Endeavor"), John Pulaski, and Phillip Radford. Phillips seeks to recover damages for personal injuries resulting from a fall that occurred while Phillips was deplaning at an airport in Charlottesville, Virginia. Phillips asserts claims of negligence and gross negligence against all four Defendants. Radford has moved to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion will be granted.

### I.     ALLEGED FACTUAL BACKGROUND

For purposes of ruling on the motion to dismiss, the Court must accept as true the following factual allegations set forth in the amended complaint. *See Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021) (noting that "the district court must accept as true all well-pleaded allegations").

On January 18, 2019, Phillips traveled from Montgomery, Alabama, to Charlottesville, Virginia, using Delta's airline services. Am. Compl. ¶ 10, Dkt. 18. The trip included a connecting flight from Atlanta to Charlottesville on an aircraft operated by Endeavor, a regional airline owned

1

by Delta. *Id.* The Endeavor aircraft was piloted by Pulaski, "the First Officer," and Radford, "the Captain and pilot in command." *Id.* ¶¶ 4, 5.

At the time of the flight, Phillips was 63 years old and suffering from a variety of impairments, including back problems, fibromyalgia, and rheumatoid arthritis. *Id.* ¶ 16. As a result of her "disabilities," Phillips was "designated as the third person to be able to exit the airplane." *Id.*

The Endeavor flight landed at Charlottesville-Albemarle Airport at approximately 6:00 p.m. on January 18, 2019. *Id.* ¶ 11. At that time, a jetway was not immediately available to transport passengers from the aircraft to the terminal. *Id.* ¶ 12. Pulaski and Radford "refused to wait for the jetway and decided to have passengers, including Plaintiff, deplane using only airstairs." *Id.* ¶ 13.

Prior to exiting the aircraft, Phillips "informed Defendant Pulaski that she would not be able to get down the airstairs with her carry-on bags and purse." *Id.* ¶ 16. Nonetheless, Pulaski "refused to wait for the jetway." *Id.* ¶ 17. Instead, Pulaski "offered to take Plaintiff's carry-on bags but not her purse (which was large), and rudely stated that if she fell down, he would not be able to catch her." *Id.* No other members of the flight crew offered to assist Phillips. *Id.*

Phillips "felt that she had no choice but to obey the commands of Defendant Pulaski." *Id.* ¶ 18. Having been given no other option to exit the aircraft, Phillips "reluctantly began to climb down the airstairs" while carrying her large purse. *Id.* ¶ 18. As she descended, Phillips noticed that the stairs were "unnaturally cold and wet." *Id.* She subsequently slipped and fell down the stairs, hitting her left temple in the process. *Id.* As a result, Phillips suffered a swollen eye and temporarily lost consciousness. *Id.* She also injured her back and neck, her left forearm, and her left wrist. *Id.* ¶ 24.

## II.     PROCEDURAL HISTORY

On September 21, 2020, Phillips brought this diversity action to recover damages for the personal injuries she allegedly sustained as a result of the fall. Her original complaint named as defendants Delta, Endeavor, and an unknown pilot identified as John Doe. After Delta and Endeavor made their initial disclosures under Federal Rule of Civil Procedure 26, Phillips moved for leave to amend the complaint to name Pulaski as a defendant in place of John Doe and to add Radford as a defendant "for his acts and omissions as Captain of the aircraft." Pl.'s Mot. to Amend ¶ 3, Dkt. 16. Judge Glen E. Conrad, to whom the case was originally assigned, granted the motion on February 22, 2021, and the amended complaint was deemed filed as of that date. On April 22, 2021, the case was transferred to the undersigned.

The amended complaint asserts claims of negligence and gross negligence against Delta, Endeavor, Pulaski, and Radford. Radford has moved to dismiss the claims against him under Rule 12(b)(6). The motion has been fully briefed and the parties waived oral argument. The matter is therefore ripe for disposition.

## III.     LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. When deciding a motion to dismiss under this rule, a court must "accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff[]." *Attkisson v. Holder*, 925 F.3d 606, 619 (4th Cir. 2019). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics"; instead, plaintiffs are only required to plead enough facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

## IV.   ANALYSIS

Phillips seeks to hold Radford directly liable for negligence and gross negligence. In support of her claims, Phillips alleges that Radford, "as the pilot in command and Captain of a common carrier, . . . owed Plaintiff the highest degree of care for her safety." Am. Compl. ¶ 26; *see also id.* ¶¶ 21–22 (asserting that the pilot in command of an aircraft has final authority over its operation under federal aviation regulations and is "therefore responsible for [passengers'] safety") (citing 14 C.F.R. §§ 1.1, 91.3, 91.11, and 121.537). Phillips alleges that Radford breached this duty of care by not waiting for a jetway to become available and instead requiring all passengers, including Phillips, "to disembark solely via airstairs, even though . . . Radford knew or ought to

have known that, because of Plaintiff's disabilities, Plaintiff's attempt to deplane Flight DELTA 3287 via airstairs would be a substantial risk to her health and safety." *Id.* ¶ 27. Phillips asserts that Radford "further breached this duty of care," as the pilot in command of the aircraft, by "fail[ing] to provide Plaintiff a safe means of disembarking the aircraft." *Id.* ¶ 30. Phillips alleges that "such actions" exhibited "complete indifference" and "utter disregard" for her safety. *Id.* ¶ 39.

Under Virginia law, which the parties agree is controlling, "[t]he elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006). Gross negligence is defined as "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016).

Radford has moved to dismiss both claims against him on the basis that the amended complaint attempts to hold him liable because of his status as the pilot in command of the flight to Charlottesville and does not contain factual allegations sufficient to establish any specific negligence on his part. *See* Def.'s Br. Supp. Mot. Dismiss 2–3, Dkt. 29. The Court agrees with Radford and concludes that the amended complaint does not state plausible claims of negligence or gross negligence against him.

It is well settled in Virginia that common carriers owe an "elevated duty of care" to their passengers.[1] *Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 434 (Va. 2006). Specifically, "a

---

[1] The Supreme Court of Virginia has defined a common carrier as "as one who, by virtue of his calling and as a regular business, undertakes for hire to transport persons or commodities from place to place, offering his services to all such as may choose to employ him and pay his charges." *Bregel v. Busch Entertainment Corp.*, 444 S.E.2d 718, 719 (Va. 1994) (internal quotation marks and citations omitted). At this stage of the proceedings, the parties do not dispute that Radford qualifies as a common carrier.

common carrier of passengers for hire by air is under a duty to exercise the highest degree of care for the safety of its passengers compatible with the normal prosecution of its business." *Commonwealth v. United Airlines, Inc.*, 248 S.E.2d 124, 130 (Va. 1978). A heightened duty of care is imposed on common carriers because a passenger "has little ability to control [her] environment" and "entrusts [her] safety to the carrier . . . ." *Taboada*, 626 S.E.2d at 434. While "this [heightened] degree of care does not mean that the carrier is an insurer of its passengers' safety," *Crist v. Wash., Va. & Md. Coach Co.*, 85 S.E.2d 213, 215 (Va. 1955), the carrier is "liable for the slightest negligence that such care could have foreseen and guarded against," *Shamblee v. Va. Transit Co.*, 132 S.E.2d 712, 714 (Va. 1963).

Applying these principles, the Court concludes that Phillips has failed to adequately plead claims of negligence and gross negligence against Radford. While Phillips repeatedly alleges that Radford was responsible for the operation of the aircraft and the safety of its passengers, Radford's position as pilot in command does not make him an "absolute insurer of [each] passenger's personal safety" under Virginia law.[2] *Taboada*, 626 S.E.2d at 434. In other words, neither a pilot in command nor any other common carrier by air is strictly liable for all unsafe conditions or defects that might arise during or after a flight. Instead, common carriers "will only be held liable

---

[2] Phillips' amended complaint cites several federal regulations to support the assertion that the pilot in command is responsible for the operation of the aircraft and the safety of its passengers. *See, e.g.*, 14 C.F.R. § 1.1 (defining a pilot in command as a person who has "final authority and responsibility for the operation and safety of the flight"); 14 C.F.R. § 121.537(d) ("Each pilot in command of an aircraft is, during flight time, in command of the aircraft and crew and is responsible for the safety of the passengers, crewmembers, cargo, and aircraft."). Radford, however, disputes whether the cited regulations are applicable to the particular flight at issue in this case. The Court finds it unnecessary to resolve this issue. While "federal statutes and regulations prescribe important duties of pilots," the law of Virginia, where the alleged negligence occurred, provides "the basic framework of tort law standards" governing this case. *Tinkler v. United States*, 982 F.2d 1456, 1466 (10th Cir. 1992). Under Virginia law, negligence must be proven and is not presumed from the mere fact of an accident or injury. *See Crist*, 85 S.E.2d at 215. This rule is "not changed by the [heightened] standard of care which [a common] carrier must observe." *Id.*

6

if the cause of the injury was within their control *and* foreseeable." *Le v. Target Stores, Inc.*, No. 1:18-cv-00520, 2019 WL 441968, at *2 (E.D. Va. Jan. 18, 2019) (emphasis added); *see also White v. Sears, Roebuck & Co.*, 242 F.2d 821, 824 (4th Cir. 1957) (noting that "courts have almost unanimously held actual or implied knowledge [of an unsafe condition] essential for the plaintiff to recover" in a slip-and-fall case against a railroad common carrier); *Kirby v. Moehlman*, 30 S.E.2d 548, 551 (Va. 1994) (holding that the same heightened duty of care owed by an innkeeper "become[s] an absolute duty where a proprietor *knew or should have known* of a danger that might have been easily removed") (emphasis added). Thus, Radford cannot be held directly liable for negligence or gross negligence merely because he served as the pilot in command of the aircraft from which Phillips fell.

Despite Phillips' arguments to the contrary, the amended complaint does not plausibly allege that Radford could have foreseen the risk of danger posed by having Phillips use the airstairs. Phillips asserts that Radford "knew or ought to have known" that, because of her disabilities, Phillips' "attempt to deplane . . . via airstairs would be a substantial risk to her health and safety." Am. Compl. ¶ 13. The amended complaint, however, is devoid of any factual content that would support this conclusory assertion. The pleading offers no indication as to how Radford knew or should have known that Phillips was disabled or that requiring her to use the airstairs would pose a substantial risk of harm. Phillips does not allege that she had any interactions with Radford prior to, during, or after the flight, or that Radford overheard or learned of her conversation with Defendant Pulaski. Nor can it be "reasonably inferred" from the amended complaint that Radford "was aware of this conversation." Pl.'s Br. Opp'n 3, Dkt. 31. Thus, the amended complaint does not contain sufficient factual allegations to "nudge" the claims of direct

negligence and gross negligence against Radford "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

To the extent Phillips suggests in her opposition brief that Radford could be held vicariously liable for the actions and omissions of Pulaski and other crew members, the amended complaint does not plead a claim of vicarious liability against Radford. "It is well established that a plaintiff may not raise new claims after discovery has begun without amending [her] complaint." *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Constr. Co.*, 612 F.3d 724, 731 (4th Cir. 2010). Accordingly, the Court declines to consider any new theory of liability raised for the first time in response to Radford's motion to dismiss.

## V.    CONCLUSION

For the foregoing reasons, the Court concludes that the factual allegations in the amended complaint are insufficient to state plausible claims of direct negligence or gross negligence against Radford. Accordingly, the Court will grant Radford's motion to dismiss and dismiss the claims against him without prejudice. An appropriate Order will issue.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record. Entered this 18th day of August, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE